**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

JESUS GUILLEN,

Plaintiff,

v. No. 1:26-cv-2111 KG/DLM

TODD BLANCHE, *Acting Attorney General of the United States*, *et al.*,

Respondents.

**PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

**THIS MATTER** is before the Court on Petitioner Jesus Guillen's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241. (Doc. 1.) Petitioner challenges the legality of his continued post-removal order detention, asserting that he has been detained far beyond the recognized six-month presumptively reasonable period, and that his removal is not significantly likely in the reasonably foreseeable future. He also filed a Motion to Expedite. (Doc. 10.) Having reviewed the record and relevant law, the undersigned recommends that the Petition be **GRANTED** and that the Motion to Expedite be **DENIED AS MOOT**.[1]

## I. Factual and Procedural Background

Petitioner Jesus Guillen is a citizen and national of Cuba. (Doc. 1 at 1; 1-1 ¶ 3.) He was paroled into the United States on July 1, 2007, and has lived continuously in the United States since that time. (Docs. 1 ¶¶ 11–12; 1-1 ¶ 3.) Petitioner never obtained lawful permanent resident status. (Docs. 1 ¶ 12; 1-1 ¶ 3.) The record also reflects that Petitioner has a criminal history. (Doc. 1-1 ¶ 4.) In November 2012, Petitioner was convicted of grand theft in Florida, sentenced to six

[1] On August 14, 2026, Chief United States District Judge Kenneth J. Gonzales entered an Order of Reference referring this case to the undersigned Magistrate Judge "to conduct hearings, if warranted, including evidentiary hearings, and to perform any legal analysis required to recommend to the Court an ultimate disposition of the case." (Doc. 9.)

months in county jail with two years of probation, and ordered to pay $46,000 in restitution. (*See id.*)

In May 2017, Petitioner was taken into Immigration and Customs Enforcement (ICE) custody and placed in removal proceedings. (Docs. 1 ¶ 13; 1-1 ¶¶ 5–6.) On August 15, 2017, an immigration judge in Miami, Florida ordered Petitioner removed from the United States.[2] (Doc. 1 ¶ 14.) The Department of Homeland Security (DHS) released Petitioner under an Order of Supervision on September 1, 2017, and instructed him to report on several occasions between 2017 and 2020. (Docs. 1 ¶ 15; 1-1 ¶ 8; 7 at 1, 6 ¶ 5.) Petitioner failed to report on February 24, 2021. (Doc. 7 at 1, 6 ¶ 5.)

On July 24, 2025, Petitioner was arrested and taken into ICE custody by Homeland Security Investigations in Miami, Florida, after a records check confirmed his final order of removal. (Docs. 1 ¶ 16; 1-1 ¶ 8; 7 at 2, 7 ¶¶ 6–7.)

On February 25, 2026, while detained at the Central Louisiana ICE Processing Center in Jena, Louisiana, Petitioner filed a habeas petition in the Western District of Louisiana, which was dismissed without prejudice on June 22, 2026. (*See* Docs. 1 ¶¶ 17–20; 1-1 at 6.) Petitioner was thereafter transferred to the Torrance County Detention Center located in Estancia, New Mexico, where he is currently detained. (*See* Docs. 1 at 1 & ¶¶ 5, 23; 1-1 at 2; 7 at 6 ¶ 2.)

On June 30, 2026, Petitioner filed the present Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241. (Doc. 1.) He challenges his continued detention pursuant to 8 U.S.C. § 1231 and asserts that he has been detained far beyond the six-month presumptively reasonable period

[2] The Government's Response and accompanying declaration state that Petitioner was ordered removed on June 1, 2017, while Petitioner's brief reflects an August 15, 2017 removal order date. (*See* Docs. 7 at 1, 6 ¶ 4; 1 ¶ 14.) The declaration of Assistant Field Office Director Shaw lists the removal order date as August 15, 2024, which appears to be a typographical error. (*See* Doc. 1-1 ¶ 7.) The briefing discrepancy regarding the removal order date is immaterial to the analysis.

recognized in *Zadvydas v. Davis*, 533 U.S. 678 (2001) and that DHS has failed to demonstrate a significant likelihood of removal in the reasonably foreseeable future. (*See id.* ¶¶ 27–41.) He seeks release from custody, or in the alternative, a bond hearing pursuant to 8 U.S.C. § 1226(a). (*See id.* at 9.)

The Government responded on July 15, 2026, summarily arguing that Petitioner's refusal to comply with prior removal attempts constitutes obstruction and that removal remains reasonably foreseeable.[3] (Doc. 7 at 4–5.) Petitioner argues in his reply brief that DHS's own evidence confirms the absence of any accepting country and acknowledges that the timeline for removal is "currently unknown." (Doc. 8 at 3 (quoting Doc. 7 at 8 ¶¶ 9–10).)

The matter is fully briefed and ready for disposition.

After the close of briefing, Petitioner filed a Motion to Expedite, requesting expedited consideration of his habeas petition in light of the length of his detention and the fact that briefing had closed. (*See* Doc. 10.)

## II. Legal Standard

Federal courts possess longstanding authority to review the legality of executive detention through the writ of habeas corpus. Section 2241 expressly authorizes courts to issue a writ of habeas corpus when a person is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). The Tenth Circuit has recognized that "[c]hallenges to immigration detention are properly brought directly through habeas." *Soberanes v. Comfort*, 388 F.3d 1305, 1310 (10th Cir. 2004) (citing *Zadvydas*, 533 U.S. at 687–88).

[3] Warden Respondents did not file a separate response. This is consistent with the standard practice in these § 2241 immigration detention cases, where wardens of private detention facilities either expressly join the Government Respondents' arguments or do not appear at all. Courts in this District have treated the Government Respondents' position as applying equally to the warden in such circumstances. *See Duhan v. Noem*, No. 2:26-cv-0019 MIS/JFR, 2026 WL 266619, at *1 n.2 (D.N.M. Feb. 2, 2026) (citations omitted). The Government Respondents' brief similarly states that their arguments "apply equally to the warden." (*See* Doc. 7 at 1 n.1.)

The fundamental purpose of a § 2241 habeas corpus proceeding is to allow a detainee to challenge the legality of his custody and to secure release from unlawful detention. *See Palma-Salazar v. Davis*, 677 F.3d 1031, 1035 (10th Cir. 2012) (quotation omitted). Because Petitioner challenges the legality of his continued detention, his claim falls squarely within the scope of § 2241.

No party has identified any factual dispute requiring an evidentiary hearing, and the issues presented are purely legal and fully briefed. As such, the existing record is sufficient to resolve the habeas petition.

## III. Discussion

To begin, the parties do not dispute that Petitioner was ordered removed in 2017. (*See* Docs. 1 ¶¶ 13–14; 7 at 1.) The parties likewise do not dispute that Petitioner has been detained for more than six months. (*See* Docs. 1 at 1; 7 at 4.) Petitioner challenges the legality of his continued post-order detention under 8 U.S.C. § 1231(a), asserting that DHS has detained him since July 24, 2025, without demonstrating any significant likelihood of removal in the reasonably foreseeable future. (*See* Docs. 1 at 1, 6 ¶¶ 30–34; 8 at 2–3.) Petitioner emphasizes that Cuba, his native country, has affirmatively refused to accept him, and that DHS has not produced any evidence that Mexico, or any other country, has agreed to receive him. (Doc. 1 ¶¶ 8–9.) Petitioner further notes that that DHS's own declarant concedes "[t]he anticipated timeline to remove [him] is currently unknown." (Doc. 8 at 2–3 (citing Doc. 7 at 8 ¶¶ 9–10).)

Respondents contend that Petitioner's prior refusal to board removal transports demonstrates a lack of cooperation with DHS's removal efforts, and they argue that removal remains reasonably foreseeable if Petitioner cooperates. (Doc. 7 at 2–3, 5.) In support,

Respondents rely on DHS's description of past removal attempts and assert that they are "confident" removal will occur "soon." (*Id.* at 2–3; 5–8.)

For the reasons explained below, the undersigned concludes that Respondents have not demonstrated that there is a significant likelihood that Petitioner will be removed in the reasonably foreseeable future and, as a result, Petitioner is entitled to release from custody subject to appropriate conditions of supervision.

**A. Petitioner's continued detention is unlawful under *Zadvydas*.**

Petitioner's continued detention is unlawful because he has been held beyond the six-month presumptively reasonable period and the record establishes that his removal is not significantly likely in the reasonably foreseeable future. Respondents have not carried their burden to show otherwise.

Post-removal detention is generally governed by 8 U.S.C. § 1231(a)(2), which mandates detention "[a]fter entry of a final removal order." *Zadvydas*, 533 U.S. at 683 (citing 8 U.S.C. § 1231(a)(2)). Pursuant to the INA, the Government must remove a noncitizen from the United States within a 90-day removal period. 8 U.S.C. § 1231(a)(1)(A). During the 90-day removal period, the noncitizen must be detained. *Id.* § 1231(a)(2). The removal period begins when the removal order "becomes administratively final." *Id.* § 1231(a)(1)(B)(i). If ICE does not remove the noncitizen within the 90-day removal period, the noncitizen "shall be subject to supervision under regulations prescribed by the Attorney General." *Id.* § 1231(a)(3).

The Government may detain a noncitizen beyond the initial 90-day removal period only for the time "reasonably necessary" to effectuate removal. *See Zadvydas*, 533 U.S. at 699; *see also* 8 U.S.C. § 1231(a)(6). Detention for six months is "presumptively reasonable." *Zadvydas*, 533 U.S. at 701. Once that period passes, a detainee need only "provide[] good reason to believe that

there is no significant likelihood of removal in the reasonably foreseeable future," at which point the burden shifts to the Government to rebut that showing with evidence. *Id.* This framework applies equally to inadmissible and arriving noncitizens. *See Clark v. Martinez*, 543 U.S. 371, 386 (2005).

As explained above, it is undisputed that Petitioner's removal order became final in 2017. His detention is therefore governed by 8 U.S.C. § 1231(a). It is also undisputed that Petitioner has been detained since July 24, 2025, and thus the six-month presumptively reasonable period under *Zadvydas* has long expired. The question, then, is whether Petitioner has shown good reason to believe that his removal is not significantly likely in the reasonably foreseeable future, and whether Respondents have rebutted that showing.

**1. Petitioner has shown good reason to believe removal is not reasonably foreseeable.**

Petitioner asserts that DHS has been unable to remove him and has failed to provide evidence that any country is willing to accept him. (*See* Doc. 1 ¶¶ 21–22.) The record shows that the Government has made efforts to remove petitioner to two countries, Cuba and Mexico. (*See* Doc. 7 at 2–3, 7–8 ¶¶ 8–9.) With respect to Cuba, Petitioner notes that removal is not reasonably foreseeable because the Cuban government has affirmatively denied repatriation. (*See* Doc. 1 ¶ 33 (citing Doc. 1-1 at 5 ¶ 25).) With respect to Mexico, Petitioner contends that Respondents have not produced any documentation showing that Mexico has agreed to accept him, and that DHS's assertions regarding third-country removal are speculative. (*See id.* ¶¶ 36–39, 41.)

Respondents do not dispute these assertions. Instead, they state that they are "confident" Petitioner can be removed "soon" if he cooperates. (*See* Doc. 7 at 5.) However, the declaration of a Deportation Officer attached to their Response expressly acknowledges that "[t]he anticipated timeline to remove Petitioner is currently unknown." (*Id.* at 8 ¶ 10.) Respondents' own evidence

therefore confirms that DHS has no accepting country and no reasonably foreseeable timeline for removal.

This absence of evidence constitutes "good reason to believe" that removal is not reasonably foreseeable. *See Zadvydas*, 533 U.S. at 701. Courts in this District have repeatedly held that prolonged detention, combined with failed or nonexistent removal efforts, satisfies a petitioner's initial burden under *Zadvydas*. *See, e.g.*, *Salazar-Martinez v. Lyons*, No. 2:25-cv-0961 KG/KBM, 2025 WL 3204807, at *2 (D.N.M. Nov. 17, 2025) (finding petitioner's burden satisfied where DHS contacted multiple countries without success and pending third-country requests were too speculative); *Gebremskel v. Ortiz*, No. 1:26-cv-1240 MIS/GBW, 2026 WL 1346552, at *2–3 (D.N.M. May 14, 2026) (finding the petitioner satisfied his burden where months of attempted removals to several third countries were unsuccessful, DHS provided no evidence that any country was willing to accept him, and where DHS's declarant admitted "[t]he anticipated timeline to remove Petitioner[ ] is currently unknown"); *Kardouh v. Lyons*, No. 2:26-cv-0619 DHU/JMR, 2026 WL 905361, at *2 (D.N.M. Apr. 2, 2026) (same, where efforts to obtain travel documents from Syria and Brazil were unsuccessful and "no country had agreed to accept him"); *Lopez Diaz v. Blanche*, No. 2:26-cv-2548 KWR/DLM, slip op. at 4–5 (D.N.M. Aug. 25, 2026) (finding petitioner satisfied his burden where Cuba refused entry, Mexico had not agreed to accept him, DHS had not secured travel documents, and DHS provided no evidence that any country was willing to receive him).

Just as in the cases above, Respondents have not shown that any country has agreed to accept Petitioner, DHS has not secured travel documents, and DHS concedes that it has no anticipated timeline for effectuating removal.

Courts in this District also consider the length of time a petitioner has been under a final order of removal without being removed. In *Diaz v. Warden of the Torrance County Detention Center*, the court held that the Government's failure to remove the petitioner for 37 years, without more, satisfied the petitioner's burden under *Zadvydas*. No. 1:26-cv-2019 MIS/JMR, 2026 WL 2030124, at *2 (D.N.M. July 14, 2026). Likewise, in *Mendez v. U.S. Immigration & Customs Enforcement*, the court found the petitioner met his burden, without more, where he had been under a final order of removal for ten years and DHS had long determined that removal could not be effectuated within a reasonable time. No. 1:26-cv-1448 MIS/DLM, 2026 WL 1453487, at *2 (D.N.M. May 22, 2026). Here, Petitioner's removal order has been final since 2017, and DHS still has not identified any country willing to accept him.

Accordingly, Petitioner has met his initial burden under *Zadvydas*.

**2. Respondents have not rebutted Petitioner's showing.**

Once Petitioner made his initial showing, the burden shifts to Respondents to produce evidence demonstrating a "significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701. Respondents have not done so.

Respondents assert that they attempted to remove Petitioner to both Cuba and Mexico. With respect to Mexico, they state that on December 17, 2025, Petitioner "failed to comply and refused to board the bus for removal under the removal program." (*See* Doc. 7 at 2, 8 ¶ 8.) With respect to Cuba, they state that on March 23, 2026, Petitioner "failed to comply for a removal flight back" to that country. (*See id.* at 3, 8 ¶ 8.) The record provides no further details regarding the circumstances of either alleged non-compliance. And Respondents acknowledge that Cuba has since refused to accept Petitioner, confirming that removal to Cuba is not reasonably foreseeable regardless of his cooperation. (*Id.*)

Respondents further assert that on July 12, 2026, they submitted a third-country removal request to ICE's removal operations team. (*Id.*) They provide no evidence, however, that any third country has agreed to accept Petitioner, nor do they identify any ongoing communications or concrete progress toward securing travel documents. Instead, Respondents state only that they are "confident" they will be able to remove Petitioner "soon," provided he cooperates. (*Id.* at 5.) Yet despite this assertion, the declaration submitted by ICE Deportation Officer Villalobos expressly states that "[t]he anticipated timeline to remove Petitioner is currently unknown." (Doc. 7 at 8 ¶ 10.) This admission confirms that DHS cannot identify any accepting country and cannot provide any timeline for effectuating removal. Such evidence is insufficient to rebut Petitioner's showing under *Zadvydas*. Accordingly, the undersigned finds that Respondents have not produced evidence demonstrating a significant likelihood of removal in the reasonably foreseeable future.

The undersigned acknowledges Respondents' references to Petitioner's documented noncompliance with prior removal efforts. However, that conduct does not alter the present record regarding the foreseeability of removal, which remains dim, or, as Respondents themselves concede, "unknown."

The Court finds guidance in *Cadogan McNaught v. De Anda-Ybarra*, No. 2:26-cv-1577 KG/DLM, 2026 WL 2253873 (D.N.M. Aug. 4, 2026). There, a Cuban national with a decades-old removal order was re-detained and DHS argued that removal was reasonably foreseeable because the petitioner had refused to cooperate with removal efforts to Mexico. *See id.* at *1–2. The Government asserted that Cuba's political situation made Mexico a "suitable and safe alternative[,]" and that the petitioner's refusal to sign removal paperwork constituted a failure to comply with removal efforts. *Id.* at *2. The court rejected that argument, explaining that obstruction does not defeat a *Zadvydas* claim unless DHS identifies "actual, concrete steps" toward

removal and produces evidence that a receiving country has agreed to accept the petitioner. *See id.* (contrasting *Abiodun v. Mukasey*, 264 F. App'x 726, 729 (10th Cir. 2008) ("holding petitioner's refusal to sign and cooperate with removal efforts demonstrated removal was reasonably foreseeable but for petitioner's lack of participation")). The Government had not shown that Cuba had changed its prior refusal, had not shown that Mexico agreed to accept the petitioner, and had admitted it had "no updates" on removal efforts. *Id.* Because DHS failed to demonstrate a significant likelihood of removal in the reasonably foreseeable future, the court ordered the petitioner's release. *See id.*

The same reasoning applies here: although Respondents cite Petitioner's refusal to board prior removal attempts, they have not produced evidence that any country has agreed to accept him and their declarant expressly states that "the anticipated timeline to remove Petitioner is currently unknown." As in *Cadogan McNaught*, obstruction alone cannot cure the absence of an available removal pathway, and DHS has not rebutted Petitioner's showing under *Zadvydas*.

Courts have consistently distinguished cases in which obstruction defeats a *Zadvydas* claim because DHS has already established a viable removal pathway. In *Abiodun v. Mukasey*, the Tenth Circuit upheld continued detention where ICE had secured travel documents, attempted multiple charter flights, and there was "no showing" that Nigeria would refuse to accept the petitioner; under those circumstances, the petitioner's refusal to cooperate was the only barrier to removal, and therefore "[did] not raise the specter of indefinite detention." *See Abiodun*, 264 F. App'x at 729. The same principle guided the District of Colorado's decision in *Zayas Rodriguez v. Baltasar*, where Mexico expressly agreed to accept the petitioner, ICE served multiple Notices of Removal, and DHS represented that removal would occur "as soon as" the petitioner signed the paperwork. *See Zayas Rodriguez v.* Baltasar, No. 1:26-cv-0686 RMR, 2026 WL 1618516, at *5–6 (D. Colo.

June 5, 2026). Because removal was otherwise significantly likely, the petitioner's refusal to sign was "fatal to his request for habeas relief[,]" and the court upheld continued detention. *Id.* at *6 (citing *Zadvydas*, 533 U.S. at 701).

Here, Respondents have not produced evidence that any country has agreed to accept Petitioner, and their declarant expressly states that "the anticipated timeline to remove Petitioner is currently unknown." Unlike *Abiodun* and *Zayas Rodriguez*—where obstruction prevented an otherwise available removal—Respondents have not shown that removal is reasonably foreseeable regardless of Petitioner's cooperation.

**B. Petitioner is entitled to immediate release.**

Having determined that Petitioner's continued detention is unlawful because he has been held beyond the six-month presumptively reasonable period and the record establishes that his removal is not significantly likely, the Court must determine the appropriate remedy. "Federal courts are authorized under [28 U.S.C.] § 2243 to 'dispose of [a habeas petition] as law and justice require' and thus possess broad discretion to fashion appropriate relief." *Hernandez v. Mullin*, No. 2:26-cv-1213 KG/KK, 2026 WL 2070000, at *2 (D.N.M. July 17, 2026) (citing *Clayton v. Jones*, 700 F.3d 435, 443 (10th Cir. 2012); *Burton v. Johnson*, 975 F.2d 690, 693 (10th Cir. 1992) (noting that a federal court "possesses power to grant any form of relief necessary to satisfy the requirement of justice")).

Courts in this District routinely order release under conditions of supervision when DHS cannot demonstrate a significant likelihood of removal in the reasonably foreseeable future. *See, e.g.*, *Kardouh*, 2026 WL 905361, at *2–3 (ordering release where DHS had no accepting country and no evidence of progress toward removal); *Gebremskel*, 2026 WL 1346552, at *3 (same).

The same result is warranted here. Because DHS has not demonstrated a significant likelihood of removal in the reasonably foreseeable future, Petitioner is entitled to immediate release under appropriate conditions of supervision pursuant to 8 U.S.C. § 1231(a)(3). Accordingly, the undersigned recommends that Petitioner be immediately released.

Petitioner also filed a Motion to Expedite, requesting expedited consideration of his habeas petition in light of the length of his detention and the fact that briefing had closed. (Doc. 10.) Because the recommended disposition grants Petitioner the relief he seeks and resolves the habeas petition in full, the Motion to Expedite should be denied as moot.

**IV. Conclusion**

For the reasons stated above, the undersigned **RECOMMENDS** the following:

1. The Petition for Writ of Habeas Corpus (Doc. 1) should be **GRANTED**.
2. The Court should **ORDER** Respondents to release Petitioner under appropriate conditions of supervision within 24 hours, and to file a status report confirming compliance within three days.
3. Petitioner's Motion to Expedite (Doc. 10) should be **DENIED AS MOOT** in light of the relief recommended herein.

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the 14-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no**

**objections are filed, no appellate review will be allowed.**

DAMIAN L. MARTINEZ
UNITED STATES MAGISTRATE JUDGE